UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

VULNAVIA MURRY; ERICH                    :
BUCKLES; JULIAN WYATT; LISA              :
HARRIS; W. BERNARD MATTOX;               :
TEISHA KENNETT; DIANDRA                  :
HALLIBURTON; ALRENA EDMONDS;             :
and all persons similarly situated who   :
consent to join this action,             :
                                         :
        Plaintiffs,                      :       FAIR LABOR STANDARDS
v.                                       :       ACT COLLECTIVE ACTION
                                         :
ELITE MARKETING GROUP, INC.;             :
ELITE MARKETING GROUP OF                 :
ATLANTA, INC.; ELITE MARKETING           :
GROUP OF CHICAGO, INC.; ELITE            :
MARKETING GROUP OF WEST, INC.;           :
ELITE MARKETING GROUP, LLC; and          :
WILLIAM SIMMS,                           :
                                         :
        Defendants.                      :
_____ :

## **COMPLAINT**

Plaintiffs VULNAVIA MURRY, ERICH BUCKLES, JULIAN WYATT,

LISA HARRIS, W. BERNARD MATTOX, TEISHA KENNETT, DIANDRA

HALLIBURTON and ALRENA EDMONDS file this action for themselves and on

behalf of all other similarly situated current and former employees of an enterprise

operating through various corporate entities in several U.S. states known

collectively as the Elite Marketing Group ("Elite Marketing") to assert claims against Elite Marketing under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., ("FLSA") for minimum wages, overtime compensation, and retaliation, on the grounds set forth below:

## JURISDICTION AND VENUE

### 1.

Plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. §§1331, 1337, and 29 U.S.C. §216(b).

### 2.

Venue is appropriate in this judicial district as the Defendants conduct business within the Northern District of Georgia.

## PARTIES

### 3.

Plaintiffs are persons who held the position of "Tabling Representative" for Elite Marketing at the Hartsfield-Jackson Atlanta International Airport ("Atlanta Airport").

### 4.

Vulnavia Murry ("Murry"), who resides in Marietta, Georgia, was employed

-2-

as a Tabling Representative from October of 2008 until August 26, 2010.

5.

Julian Wyatt ("Wyatt"), who resides in Jonesboro, Georgia, was employed as a Tabling Representative from March or April of 2007 until September 8, 2010.

6.

Lisa Harris ("Harris"), who resides in College Park, Georgia, was employed as a Tabling Representative from March of 2009 until September 10, 2010.

7.

Erich Buckles ("Buckles"), who resides in Union City, Georgia, was employed as a Tabling Representative from October of 2009 until September 16, 2010.

8.

W. Bernard Mattox ("Mattox"), who resides in Stone Mountain, Georgia, was employed as a Tabling Representative from October of 2009 until September 16, 2010.

9.

Diandra Halliburton ("Halliburton"), who resides in Conyers, Georgia, was employed as a Tabling Representative from March of 2007 until September 16,

2010.

10.

Teisha Kennett ("Kennett"), who resides in Atlanta, Georgia, was employed as a Tabling Representative from March of 2007 until September 16, 2010.

11.

Arlena Edmonds ("Edmonds"), who resides in Atlanta, Georgia, was employed as a Tabling Representative from May of 2007 until June of 2009.

12.

The Plaintiffs bring this suit as a collective action on behalf of themselves and all other similarly situated Elite Marketing employees who consent to representation, pursuant to 29 U.S.C. §216(b).  The individual Plaintiffs all consent to the filing of their claims in this action.  *See Attachments* 1- 8.

13.

Elite Marketing is a business enterprise operated by and through one or more of the Defendant corporate entities.  They are referred to collectively in this complaint as "Elite Marketing."

14.

Defendant Elite Marketing Group, Inc. is a New York domestic business

-4-

corporation which serves as the headquarters for the entire enterprise.  This defendant is located at 494 8th Avenue, Suite 1400, New York, New York.  This Defendant's founder and President is Howard Horowitz, who may be served with process at 900 Third Avenue, New Hyde Park, New York 11040.

15.

Defendant Elite Marketing Group of Atlanta, Inc. is a Delaware corporation with a registered agent located at Incorp Services, Inc., One Commerce Center, 1201 Orange Street, Suite 600, Wilmington, Delaware  19899.  This Defendant may also be served through Elite Marketing's President, Howard Horowitz.

16.

Defendant Elite Marketing Group of Chicago, Inc., is a Delaware corporation with a registered agent located at Incorp Services, Inc., One Commerce Center, 1201 Orange Street, Suite 600, Wilmington, Delaware 19899.  This Defendant may also be served with process through its President, Howard Horowitz.

17.

Defendant Elite Marketing Group, LLC is a Delaware limited liability company with a registered agent located at Wilmington Trust SP Services

(Delaware), Inc., 1105 N. Market Street, Suite 1300, Wilmington, Delaware 19801. This Defendant may also be served with process through its President, Howard Horowitz.

18.

Defendant Elite Marketing Group, LLC is a Georgia limited liability company and may be served through its registered agent, Nancy R. Burney, 8025 Tangletree Way, Roswell, Georgia 30075.

19.

Defendant Elite Marketing Group West, Inc. is a Delaware corporation with a registered agent located at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.  This Defendant may also be served with process through its President, Howard Horowitz.

20.

Defendant William Simms ("Simms") is a program manager who works for Elite Marketing at the Atlanta Airport.  At all times material, Simms directly supervised all Plaintiffs and exercised control over their work schedules, pay, and method of compensation.

21.

Upon information and belief, the above Defendants operated as an enterprise as that term is defined under the regulations enforcing the Fair Labor Standards Act.  The enterprise employs at least two employees engaged in interstate commerce and has annual gross earnings of at least $500,000.

22.

Elite Marketing is an "employer" within the meaning of FLSA § 203(d) and is not exempt from any provisions under the Act.

## FACTUAL ALLEGATIONS

23.

Elite Marketing is an enterprise that specializes in various forms of direct consumer marketing on behalf of its clients.

24.

One form of direct marketing at issue in this case is Elite Marketing's credit card acquisition campaign at U.S. airports to solicit travelers to complete credit card applications on behalf of airlines and credit card companies.

25.

Elite Marketing works on behalf of American Express and Delta Air Lines to solicit airline travelers to apply for the American Express Delta SkyMiles credit card at all major Delta Air Lines hub and gateway airports, including the Hartsfield-Jackson International Airport in Atlanta, Georgia; the Cincinnati/Northern Kentucky International Airport in Cincinnati, Ohio; the Detroit Metropolitan Wayne County Airport in Detroit, Michigan; the Minneapolis-Saint Paul International Airport in Minneapolis, Minnesota; the Los Angeles International Airport in Los Angeles, California; the Chicago O'Hare International Airport in Chicago, Illinois; and the John F. Kennedy International Airport in New York, New York.

26.

Elite Marketing operates similar programs with AirTran Airways at its hub airports.

27.

Elite Marketing solicits travelers though a network of "Tabling Representatives," stationed at promotional kiosks located adjacent to Delta Air Lines and Airtran Airways departure and arrival gates.

28.

All of the above-named Plaintiffs worked for Elite as Tabling

Representatives at the Atlanta Airport.

29.

Elite Marketing classifies their Tabling Representatives as independent

contractors rather than employees.  As a result, they did not report them as

employees to the Georgia Department of Labor and did not pay the employer's

share of payments under the Federal Insurance Contributions Act.

30.

Plaintiffs are, in fact, employees of Elite Marketing Group.

31.

In order to work as Tabling Representatives, individuals are required to

attend Elite Marketing's mandatory training.

32.

Elite Marketing created and distributed a training manual for all Tabling

Representatives.

33.

Elite Marketing  requires Tabling Representatives to wear uniforms and

obtain security badges with Elite Marketing's name clearly visible.  Plaintiffs'

uniforms included logos for Delta Air Lines and American Express.

34.

Elite Marketing established set work schedules for Tabling Representatives.

35.

Elite Marketing had a morning shift, from approximately 6:15 AM until 1:30

PM, and an evening shift from approximately 1:15 PM until 7:30 PM.

36.

Among other things, Elite Marketing's training manual outlined Plaintiffs'

job duties, work rules, and selling techniques.

37.

The training manual set out the following specific duties:

1.      Dress both professionally and comfortably. To effectively
        represent the American Express & Delta brands, it is important
        that you project a professional image. Daily attire will consist
        of collared Amex/Delta logo shirt, Black pants, and comfortable
        black shoes.

2.      Arrive 15 minutes prior to your scheduled shift, be ready to work on
        time, and make sure to check in with your manager.

3.      Set up an attractive, neat/orderly kiosk display. Properly display all signage, applications, and premiums.

4.      Speak with as many Delta and Northwest travelers as possible, and attempt to persuade them to apply for the Card by describing the many benefits of Card membership – always conducting yourself in a professional and courteous manner.

5.      Encourage same day application submission for the Gold Consumer or Business Card by describing the special offer they can only get through applying with you and offering American Express premium incentives. (Customers will NOT be able to take an application with them and use it to apply for the card at a later time as they are not mailable).

6.      Use the premium incentives as a promotional offer only. These items should be used as a tool to attract people to the kiosk to learn more about the Delta Consumer and Business Cards. They should only be given to those individuals who apply for the card.

7.      Be knowledgeable of each of the Delta Consumer and Business Cards, their features and benefits, as well as the key terms & conditions – You are representing American Express and Delta at these events, and should be viewed as an expert on the products.

8.      Provide accurate & timely reporting of the collected applications, as well as qualitative feedback.  Call in the number of applications taken (every night) to the on-site manager. Complete a daily application report for the applications you received for the day.

9.      At the end of your shift, all cardboard should be broken down and placed next to the garbage and all materials should be locked back into storage.

10.     You must have all of your training materials with you at all times.

38.

Tabling Representatives are assigned to specific kiosk locations in the airports at which they work.

39.

Elite Marketing maintained kiosks at fixed locations adjacent to airline departure and arrival gates.

40.

While stationed at Elite Marketing kiosks, representatives solicit travelers to complete credit card applications.

41.

Elite Marketing provided all marketing materials for use during solicitations, including credit card applications, brochures, signage on and around the kiosks, and gift items for customers who complete applications.

42.

Tabling Representatives are required to wear a uniform that consists of a collared shirt and black slacks.

43.

Elite Marketing regulated the type of jewelry and shoes that can be worn during scheduled shifts, and the manner in which its shirts can be worn (i.e., shirts must be tucked in and sleeves cannot be rolled up).

44.

Tabling Representatives are required to call in advance if they are going to be tardy for their shifts.  Excessive tardiness subjects Tabling Representatives to punishment in the form of monetary deductions from their paychecks.

45.

When Tabling Representatives are to be absent for any reason, they are required to arrange for another representative to cover their shift.  Failure to do so subjects representatives to a one day suspension or monetary deductions from their pay.

46.

When performing their duties, Tabling Representatives are required to follow a sales script provided by Elite Marketing.  They are required to use and repeat certain words and phrases during their sales pitches.

47.

Elite Marketing closely monitored Tabling Representatives' performance through the use of secret shoppers.

48.

Tabling Representatives perform the following specific duties at Elite Marketing's direction:  reporting for a mandatory meeting at the beginning of each shift; reporting to an assigned kiosk after the mandatory meeting; physically setting up the marketing materials at the assigned kiosk; soliciting individual travelers while standing no more than 3 feet from the assigned kiosk location; asking travelers to complete American Express Delta SkyMiles credit card applications using a script provided by Elite Marketing; breaking down material packaging such as plastic and cardboard and placing it near the garbage cans; and logging in all completed application data into the Elite Tracking Management System database.

49.

Tabling Representatives who fail to follow Elite Marketing's directives are subject to discipline, including being sent home, suspended, or having monetary deductions taken from their pay.

50.

Elite Marketing established daily incentive goals that allowed Tabling Representatives to earn "bonuses" upon meeting certain thresholds for completed and approved applications.  These incentives were based on individual performance and the performance of all representatives on the shift.

51.

Elite Marketing engaged in collective punishment of all representatives if they failed, as a group, to meet shift goals for the number of completed and approved credit card applications.

52.

As set forth above, Elite Marketing controlled and supervised every aspect of Plaintiffs' work.

53.

Elite Marketing retained the power to hire, fire, discipline and modify Plaintiffs' working conditions.

54.

Plaintiffs' work relationship with Elite Marketing was indefinite, and continued as long as they met Elite Marketing's performance expectations. Several Plaintiffs worked as Tabling Representatives for several years.

55.

The work Plaintiffs performed did not require advanced skills or education.

56.

Plaintiffs' work was an integral part of Elite Marketing's business.

57.

Elite Marketing controlled the premises where Plaintiffs worked.

58.

Tabling Representatives did not possess the authority to hire, fire, supervise or discipline other employees.

59.

As set forth above, Plaintiffs performed duties normally associated with regular, full time employment.

60.

Plaintiffs and all similarly situated Tabling Representatives were employees entitled to the minimum wage and overtime provisions of the FLSA.

61.

Plaintiffs and all similarly situated employees were and are employees engaged in interstate commerce expressly covered by the protections of the FLSA, 29 U.S.C. §207(a).

62.

Plaintiffs did not exercise any independent judgment or discretion in the performance of their regular duties.

63.

At all times relevant to this action, Tabling Representatives were required to work a specific schedule and had to report to work on time.

64.

Plaintiffs and all similarly situated employees were not paid a salary for their work.

65.

If Plaintiffs were late or failed to arrive at the start of their scheduled shift,

they were not paid.  Moreover, they were subject to discipline, including suspensions and reductions in their pay.

66.

Plaintiffs were not paid for sick days, vacation days, or holidays.

67.

Plaintiffs and all Tabling Representatives received "base" pay in the amount of $4.00 for each completed credit card application they obtained during their shift.

68.

In addition, Elite Marketing paid "bonuses" to individuals and entire shifts if they were able to meet certain benchmarks that were set each day.  There were benchmarks for the number of completed applications as well as the number of approved applications.

69.

Tabling Representatives were subject to having their "bonuses" reduced if they failed to meet other expectations, including being tardy, failing to log in the completed applications within a certain time period after the conclusion of a shift, failing to follow the solicitation script, or for any other perceived deficiencies.

70.

The bonuses paid did not constitute a bona fide commission.

71.

Plaintiffs and other similarly situated Tabling Representatives worked a full-time schedule Monday through Friday and were required to work at least one day over the weekend.

72.

Each day, Plaintiffs and similarly situated Tabling Representatives worked, in addition to their regularly scheduled 8 hour shift, at least 2 additional hours soliciting applications, and an additional hour logging data into Elite Marketing's marking database.

73.

Plaintiffs and other similarly situated Tabling Representatives regularly worked in excess of 40 hours per week.

74.

Tabling Representatives regularly worked between at least 50 to 60 hours per week.

75.

Elite Marketing never paid any overtime to its Tabling Representatives, including Plaintiffs.

76.

During their employment with Elite Marketing, Plaintiffs had discussions with other Tabling Representatives about their contractor status and their improper exempt classification.  Employees complained about not being paid overtime.

77.

Based on their conversations with other employees, Plaintiffs have a reasonable and good faith belief that other current and former Tabling Representatives would be likely to join this action as parties plaintiff if they were aware of its existence.

## COUNT ONE

### (Claim for Overtime Under FLSA § 207)

78.

The above facts support Plaintiffs' claims for relief under the FLSA.

79.

Elite Marketing's failure to compensate Plaintiffs and all similarly situated

Tabling Representatives at the rate of time-and-a-half for all hours they worked in excess of 40 hours per week is a violation of § 207 of the FLSA.

80.

Elite Marketing's violations were in bad faith, intentional and willful.

81.

Plaintiffs are entitled to have their overtime for a period of three years from the date of this action and an equal amount as liquidated damages.

## COUNT TWO

### (Minimum Wage)

82.

During the course of their employment, Plaintiffs and similarly situated Tabling Representatives were required to attend a number of mandatory meetings and training events.

83.

Elite Marketing required its Tabling Representatives to attend bi-weekly meetings with their managers.  These meetings lasted approximately 2 hours.

84.

Elite Marketing also required Tabling Representatives to attend training

sessions and to sit for testing approximately once per quarter, or 4 times per year. These events lasted at least 4 hours.

85.

Elite Marketing also required Tabling Representatives to attend semi-annual meetings with its managers and representatives from its clients.  In the case of the Plaintiffs, they had to meet with representatives from Delta Air Lines and American Express.  These meetings lasted at least 5 hours.

86.

Elite Marketing did not compensate Plaintiffs or other similarly situated Tabling Representatives for the time they spent attending at these mandatory meetings.

87.

Plaintiffs are entitled to minimum wage and/or overtime for the hours they spent at these mandatory meetings and events.

## COUNT THREE

### (Retaliation)

88.

On September 15, 2010 thirteen (13) current and former employees participated in a meeting with attorneys Andrew Coffman and Stephanie Banks regarding their claims in this lawsuit.

89.

Erich Buckles, Teisha Kennett, Bernard Mattox, Diandra Halliburton and Phoenix Wright were employed with Elite Marketing when they participated in the meeting with the attorneys.

90.

Several former employees, including Vulnavia Murry, Lisa Harris, Julian Wyatt, Chuck Calvello, William Sanders, Brandon Walton, and Amanda Young also participated in the meeting.

91.

The purpose of the meeting was to formulate a plan to institute a legal action against Elite Marketing for misclassifying their employees as independent contractors and to obtain damages for unpaid overtime.

92.

All employees understood that to participate in the action they would be required to provide evidence, including testimony, to support their claims.

93.

Upon information and belief, Phoenix Wright acted as an informant on behalf of or otherwise conspired with Elite Marketing to eavesdrop on Plaintiffs' privileged attorney-client meeting.

94.

Upon information and belief, Phoenix Wright informed Elite Marketing of Plaintiffs' initiation of this legal action against them on September 15 or 16, 2010.

95.

On the day following the meeting, September 16, 2010, William Simms, a project manager for Elite Marketing, fired all employees who participated in the above referenced meeting, except Phoenix Wright.

96.

The reasons Simms gave for terminating Buckles, Kennett, Mattox and Halliburton were pretextual to cover Elite Marketing's retaliatory motive.

97.

Elite Marketing terminated Buckles, Kennett, Mattox and Halliburton in retaliation for their protected activities.

98.

Elite Marketing's retaliation against these employees violated 29 U.S.C. § 215(a)(3).

99.

As a result of Elite Marketing's actions, the affected Plaintiffs seek all legal and equitable remedies available to them without limitation.

WHEREFORE, Plaintiffs pray that this Court award the following relief: For their overtime claims:

(a)     Permit this case to proceed as a collective action under 29 U.S.C. § 216 for Defendants' Tabling Representatives, past and present, who consent to participate in this action by filing written notice with the Court;

(b)     Award Plaintiffs and all similarly situated persons who consent to join this action payment for their overtime during the three years preceding

the filing of this complaint, calculated at one and one-half times their

normal hourly rate;

(c)     Award liquidated damages;

(d)     Award prejudgment interest on all back wages and unpaid overtime;

(e)     Issue a declaratory judgment that Tabling Representatives are

employees as defined under the Act;

(f)     An award of lost wages, plus interest thereon up to the time of trial;

(g)     An award of all legal and equitable damages and remedies available

under the law to effectuate the purposes of the Act, without limitation;

(h)     A temporary and permanent injunction reinstating each employee

terminated on September 16, 2010 to his or her previous position and

prohibiting any further acts of retaliation against employees;

(i)     An award of attorneys' fees and costs;

(j)     A trial by jury on all issues so triable; and

(k)     Such other and further relief this Court deems just, equitable

and proper.

This September 24, 2010.

         */s/ David F. Walbert*
         David F. Walbert
         Georgia Bar No. 730450
PARKS CHESIN & WALBERT, PC      dwalbert@pcwlawfirm.com
75 14th Street, N.E., 26th Floor      Andrew Y. Coffman
Atlanta, Georgia 30309-3604      Georgia Bar No. 173115
Telephone: (404) 873-8000      acoffman@pcwlawfirm.com
Facsimile: (404) 873-8050

         */s/ Stephanie D. Banks*
         Stephanie D. Banks, Esq.
THE LAW OFFICE OF STEPHANIE      Georgia Bar No. 036378
D. BANKS & COMPANY, LLC      sdbanks@sdbankslaw.com
2930 Alcove Drive
Scottdale, GA 30079
Telephone: (404) 296-7909
Facsimile: (404) 296-7907

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

VULNAVIA MURRY, et al.,           :
                                  :          CIVIL ACTION NO.
        Plaintiffs,               :
                                  :
                                  :
v.                                :
                                  :
ELITE MARKETING GROUP,            :
LLC,                              :          FLSA COLLECTIVE ACTION
                                  :
        Defendant.                :

## CONSENT TO PARTICIPATE AS PLAINTIFF IN ACTION TO SECURE RIGHTS UNDER THE FAIR LABOR STANDARDS ACT

I, VULNAVIA MURRY, am a former employee of Elite Marketing Group, LLC, where I held the position of Table Representative. I hereby consent to participate as a party plaintiff in this action for all purposes, pursuant to 29 U.S.C. § 216(b). I understand that I will be bound by the outcome of this action, including any settlement or judgment.

_____
VULNAVIA MURRY



**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **VULNAVIA MURRY, et al.,** | : | |
| | : | **CIVIL ACTION NO.** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ELITE MARKETING GROUP,** | : | |
| **LLC,** | : | **FLSA COLLECTIVE ACTION** |
| | : | |
| **Defendant.** | : | |

<u>CONSENT TO PARTICIPATE AS PLAINTIFF IN
ACTION TO SECURE RIGHTS UNDER THE
FAIR LABOR STANDARDS ACT</u>

I, ERICH BUCKLES, am a former employee of Elite Marketing Group,

LLC, where I held the position of Table Representative.  I hereby consent to

participate as a party plaintiff in this action for all purposes, pursuant to 29 U.S.C.

§ 216(b).  I understand that I will be bound by the outcome of this action, including

any settlement or judgment.

_____
ERICH BUCKLES



**EXHIBIT
"2"**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **VULNAVIA MURRY, et al.,** | : | |
| | : | **CIVIL ACTION NO.** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ELITE MARKETING GROUP,** | : | |
| **LLC,** | : | **FLSA COLLECTIVE ACTION** |
| | : | |
| **Defendant.** | : | |

### CONSENT TO PARTICIPATE AS PLAINTIFF IN ACTION TO SECURE RIGHTS UNDER THE FAIR LABOR STANDARDS ACT

I, JULIAN WYATT, am a former employee of Elite Marketing Group, LLC,

where I held the position of Table Representative.  I hereby consent to participate

as a party plaintiff in this action for all purposes, pursuant to 29 U.S.C. § 216(b).  I

understand that I will be bound by the outcome of this action, including any

settlement or judgment.

_____

JULIAN WYATT



## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| VULNAVIA MURRY, et al., | : | |
| | : | CIVIL ACTION NO. |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| ELITE MARKETING GROUP, | : | |
| LLC, | : | FLSA COLLECTIVE ACTION |
| | : | |
| Defendant. | : | |

### CONSENT TO PARTICIPATE AS PLAINTIFF IN ACTION TO SECURE RIGHTS UNDER THE FAIR LABOR STANDARDS ACT

I, LISA HARRIS, am a former employee of Elite Marketing Group, LLC, where I held the position of Table Representative. I hereby consent to participate as a party plaintiff in this action for all purposes, pursuant to 29 U.S.C. § 216(b). I understand that I will be bound by the outcome of this action, including any settlement or judgment.

_____

LISA HARRIS



EXHIBIT "4"

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| VULNAVIA MURRY, et al., | : | CIVIL ACTION NO. |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| ELITE MARKETING GROUP, | : | |
| LLC, | : | FLSA COLLECTIVE ACTION |
| | : | |
| Defendant. | : | |

## CONSENT TO PARTICIPATE AS PLAINTIFF IN ACTION TO SECURE RIGHTS UNDER THE FAIR LABOR STANDARDS ACT

I, W. BERNARD MATTOX, am a former employee of Elite Marketing Group, LLC, where I held the position of Table Representative. I hereby consent to participate as a party plaintiff in this action for all purposes, pursuant to 29 U.S.C. § 216(b). I understand that I will be bound by the outcome of this action, including any settlement or judgment.

_____
W. BERNARD MATTOX



EXHIBIT "5"

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| **VULNAVIA MURRY, et al.,** | : | |
| | : | **CIVIL ACTION NO.** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ELITE MARKETING GROUP, LLC,** | : | **FLSA COLLECTIVE ACTION** |
| | : | |
| **Defendant.** | : | |

### CONSENT TO PARTICIPATE AS PLAINTIFF IN ACTION TO SECURE RIGHTS UNDER THE FAIR LABOR STANDARDS ACT

I, TEISHA E. KENNETT, am a former employee of Elite Marketing Group, LLC, where I held the position of Table Representative. I hereby consent to participate as a party plaintiff in this action for all purposes, pursuant to 29 U.S.C. § 216(b). I understand that I will be bound by the outcome of this action, including any settlement or judgment.



TEISHA E. KENNETT

**EXHIBIT "6"**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **VULNAVIA MURRY, et al.,** | : | **CIVIL ACTION NO.** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ELITE MARKETING GROUP,** | : | |
| **LLC,** | : | **FLSA COLLECTIVE ACTION** |
| | : | |
| **Defendant.** | : | |

### CONSENT TO PARTICIPATE AS PLAINTIFF IN ACTION TO SECURE RIGHTS UNDER THE FAIR LABOR STANDARDS ACT

I, DIANDRA HALLIBURTON, am a former employee of Elite Marketing

Group, LLC, where I held the position of Table Representative.  I hereby consent

to participate as a party plaintiff in this action for all purposes, pursuant to 29

U.S.C. § 216(b).  I understand that I will be bound by the outcome of this action,

including any settlement or judgment.

DIANDRA HALLIBURTON



**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **VULNAVIA MURRY, et al.,** | : | |
| | : | **CIVIL ACTION NO.** |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| **ELITE MARKETING GROUP, LLC,** | : | **FLSA COLLECTIVE ACTION** |
| | : | |
| Defendant. | : | |

<u>CONSENT TO PARTICIPATE AS PLAINTIFF IN</u>
<u>ACTION TO SECURE RIGHTS UNDER THE</u>
<u>FAIR LABOR STANDARDS ACT</u>

I, ARLENA EDMONDS, am a former employee of Elite Marketing Group, LLC, where I held the position of Table Representative. I hereby consent to participate as a party plaintiff in this action for all purposes, pursuant to 29 U.S.C. § 216(b). I understand that I will be bound by the outcome of this action, including any settlement or judgment.

_Arlena Edmonds_
ARLENA EDMONDS


EXHIBIT "8"